In the Matter of the Estate of CHARLES GLASER, Deceased.

Surrogate's Court, Richmond County, May 31, 1934.

*John M. Braisted*, for the administratrix.

*Carl D. Isaacs*, for adult claimants.

*Joseph Scollar*, special guardian.

SMITH, S. The administratrix of decedent's estate applied for settlement of her account and cited the descendants of one Julius Raisch, deceased, to appear therein and prove their alleged claim to share in said estate. The matter in issue became, therefore, the pedigree of said Julius .Raisch and the relationship of his descendants to the decedent.

Upon the trial of the issue it was stipulated that the decedent, Charles Glaser, was a son of Caroline Glaser.

One William Conway, called as a witness for the claimants, testified that he had been in the employ of the Richmond Light and Railway Company for thirty-five years and that for a period of three years prior to such employment by said railroad company he had worked for Julius Raisch at his hotel and picnic grounds at Silver Lake; that the decedent, Charles Glaser, lived at the said place during the time that witness was employed there, and he testified of an occurrence which evidently had made an impression on his mind, when the decedent had informed the witness that Julius Raisch was his half-brother and of another occasion when said decedent had informed the witness that said Julius Raisch was a child of his mother by her first husband and that decedent was a child by her second husband. Witness also stated that he had seen the decedent's brother and decedent's sister, Lena Wornell, at the same place while he was employed there and that he knew Mrs. Wornell, having lived in the same dwelling with her and her husband, and that her husband had been employed by the same railroad company by whom the witness was employed and that the decedent had informed witness that Mrs. Wornell was his sister. The court believes that said Conway was a reliable witness.

One John A. Mullock also testified. His deposition was taken by commission in the State of California and objection was taken to its competency. Decision as to its acceptance was reserved at the request of the attorney for the administrator to permit him to file a brief as to the incompetency of such testimony, and such brief having been filed and examined, the objection taken is overruled, the testimony accepted and a motion to strike out denied. The witness stated that he had worked from 1898 to 1906 off and on for Julius Raisch at his hotel and picnic grounds as a pin boy, taking care of boats and doing general chores, and while there employed had been informed by said Raisch that said decedent, Charles

Glaser, was his brother, and that during said term of employment said decedent had also informed the witness that said Julius Raisch was his brother; that Julius Raisch was the child by his mother's first husband, and that he was a child by her second husband.

While these statements of the decedent to said witnesses were obviously based upon what decedent had learned from others and was only hearsay evidence, yet his declarations of the marriage of his mother and his relationship to Julius Raisch bound the declarant and was admissible evidence and is competent against those claiming under decedent. The relationship might be considered established without further testimony. However, one of the claimants was called as a witness and testified that her father, Julius Raisch, kept a hotel and picnic grounds at Silver Lake (now the reservoir for the Catskill water supply for Staten Island), and that Charles Glaser, the decedent, lived there with her father and mother for a number of years, and that she and her brothers and sisters, the children of Julius Raisch, always called the decedent, "Uncle Charley," and that the children of decedent's sisters, Anna Smith and Lena Wornell, visited at the home of Julius Raisch, and that said children always called Julius Raisch, "Uncle Julius."

One Catherine Schubert also testified. Her deposition was taken by commission in the State of California and objection was also taken to its competency as in the matter of the testimony of the witness John A. Mullock, and the same disposition having been made of such objection as in that matter and the testimony received and the motion to strike out denied, it appeared that said witness was formerly Catherine Raisch; that she was aged seventy-two years; that she was a native of Germany, and was a sister-in-law of Caroline Glaser; that said witness came to the United States in 1882 and went to live at the home of said Caroline Glaser and John Christian Glaser, her husband, on Staten Island; that while witness there resided the Glasers sent over to Germany for Mrs. Glaser's son, Julius Raisch, where he was living and learning a baker's trade, and that said Julius Raisch came over from Germany, went to live with the Glasers and their children, where the witness was living, and that Mrs. Glaser treated him as one of her children; that Caroline Glaser made declarations to the witness during the time that witness resided at the Glaser residence to the effect that she, said Caroline Glaser, had been twice married; that Julius Raisch was the son by her first husband, and the Glaser children by her second husband, but the witness stated that at no time had the name of the first husband been mentioned; that Caroline Glaser has been dead more than forty years and her husband, John Christian Glaser, more than forty-five years.

The testimony of the said Catherine Schubert was not altogether hearsay; some of it was original evidence within the knowledge of the declarant, viz., the fact that the decedent and Julius Raisch lived together as children of one mother, and the hearsay evidence of the declarations of said Caroline Glaser do not violate the rule laid down in the case of *Aalholm* v. *People* (211 N. Y. 406), specifically called to the court's attention by the brief of the attorney for the administratrix, to the effect that such declarations are not competent unless there is some proof *dehors* the declarations themselves that the declarant was related to the family which the declarations are intended to affect; such proof of relationship would be found in the original evidence of such witness, and is corroborated by the stipulation as to relationship of the decedent and said Caroline Glaser.

And it must be remembered that said Caroline Glaser at the time she made such declarations was speaking of her own family, of her own children, all of whom as appears by the original evidence of the witness were at that time living together as one family under Caroline Glaser's own roof tree.

Caroline Glaser was the common ancestor and was not seeking to establish a relationship with any other family as in the *Aalholm* case that would require proof of her marriage to the father of Julius Raisch *dehors* her declarations, and such declarations were of pedigree and were accepted as facts by her children as appears by the testimony in relation to their declarations and actions given on the trial of the issue.

The declarations of Caroline Glaser in relation to her family which were transmitted from her as the first generation to the second generation, declared anew by the second generation and acted upon by the third generation until the time came to share an estate, were competent evidence under the rule laid down in Greenleaf on Evidence (16th ed.), section 114-a, under the necessity of the case due to the difficulty of obtaining other proof and the circumstantial guaranty of trustworthiness arising from the circumstances under which the declarations were made.

The brief filed in behalf of the administratrix calls the court's attention to the fact that Caroline Glaser's maiden name was Caroline Raisch and that she never mentioned the name of the father of Julius Raisch in her declarations to the witness, Catherine Schubert, who was her own sister-in-law, and that she had left Julius Raisch in Germany when she came to this country, and to the inference that the court must take from such facts. The only inference that the court can draw therefrom is that the common ancestor married a man by the same name as her own; that

she spoke of the father of Julius Raisch as her first husband and that her son Julius Raisch was left in Germany with relatives who were able to care for him and eventually to put the boy in the position of learning a trade, for the law presumes morality and not immorality, marriage and not concubinage, legitimacy and not bastardy. (*Hynes* v. *McDermott*, 91 N. Y. 451.) And the law also presumes that every child is legitimate. (*Starr* v. *Peck*, 1 Hill, 270.) And Wharton on Evidence, section 1298, says: " That a person born in a civilized nation is legitimate is a presumption of law, to be binding until rebutted."

No evidence was offered by the administratrix to overcome such presumptions, and the statement in such brief that the witness Kuck, a blood cousin of the decedent, called by the administratrix, that the decedent stated to her that all of the relatives he had were his sisters Lena Wornell and Anna Smith, is not borne out by the record which shows that the witness said: " He said that he only had two sisters and that they are dead and now he would give May the deed because he knew she would tend to it when he died. Q. He said he only had two sisters left? A. Yes."

The court cannot find that the witness intended to say that the decedent said that his two sisters were his only relatives, for the language of the witness is plain that the decedent said that he had only two sisters, both dead, which from the testimony offered is unquestionably the fact, and that he was going to give the deed (of a cemetery lot) to a niece, May Smith Kabke, to attend to it for him. Said witness was born a Glaser and was related to the decedent as a cousin, and she testified that she always called Julius Raisch, " Cousin Julius," and that she was brought up " thinking that Charley [the decedent] was our cousin and that Mr. Raisch was our cousin."

The testimony of the witness tends to corroborate in the mind of the court that the decedent and the said Julius Raisch were children of the same mother, for the witness linked them together as her cousins.

The administratrix, May Smith Kabke, was called as a witness by the court to endeavor to determine how she and her brother considered Julius Raisch, if in the light of a relation. Said witness stated that she had called Julius Raisch " uncle," but endeavored to explain such designation by saying that she taught her children to call all people with gray hair " uncle," and she further stated that she was brought up to consider Julius Raisch as a cousin. The court believes the witness, to put it charitably, has forgotten what she was taught, for there would be no reason, if the witness

has been taught to consider Julius Raisch her cousin, to call him " uncle," and the explanation of calling all people with gray hair " uncle " is so far-fetched as to be unbelievable. The court considers that the witness Kabke, having been called immediately after the witness Kuck, adopted the statement that Mrs. Kuck made, which was to the effect that she, Mrs. Kuck, was brought up thinking that Charley, the decedent, was " our cousin " and that Mr. Raisch was " our cousin." The court believes that the use of the word " uncle " was the way in which the witness designated Julius Raisch and that she was taught to call him her uncle.

The petition for administration made by the decedent in 1903 upon the estate of his brother Henry, in which no mention is made of Julius Raisch, does not create in the mind of the court any presumption that the decedent intended to deny his relationship to said Julius Raisch. At that time, as now, a relative of the full blood had the first right to administer the estate, and when the decedent was asked for the names of the relatives of the deceased he evidently believed that as the relatives of the full blood had the right of administration they also had the right of inheritance. Such cases are not uncommon. They frequently occur. A like case occurred in this court within the last month, and there was no dispute in that matter about the legitimacy of the half blood, and the papers had been prepared in that instance by an attorney.

In any event, this court would accept the positive statements of the witnesses Conway and Mullock as against the self-serving declaration of the decedent contained in the petition in a proceeding to which said Julius Raisch was not a party and in which no determination of the relationship was made by the court.

The point that the witness Conway testified as to declarations in relation to a half-brother and the witness Mullock about a brother are not conflicting for a half-brother is a brother of the half blood, and the distinction is immaterial. The point is that the relationship was declared by the decedent.

The motion to dismiss the proceeding is denied, and the court accordingly finds that Julius Raisch was a half-brother of the decedent, Charles Glaser, and that his descendants are entitled to share in decedent's estate, and as all of the persons entitled are nieces or nephews or the representative of a niece the amount of the estate is to be divided *per capita* among all of the nieces and nephews and the child of the deceased niece.

*Matter of Samson* (257 N. Y. 358), which although a determination as to section 98, subdivision 5, of the Decedent Estate Law prior to the act of 1929, is by reason of no material change applicable to section 83, subdivision 6, of the Decedent Estate Law now in force.

Costs of the proceeding, payable out of the estate, are allowed to the contestants, and an allowance will be made to the special guardian and inserted in the decree which is herewith directed to be entered in accordance herewith.